**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

BEAU STEPHAN, GEORGE STRAY, LEONARD KIRSCHLING, GEORGE PHIRIPES, RHONDA HABELL, CAMERON BASS and STEPHEN BUBNIAK, individually, and on behalf of all others similarly situated,

*Plaintiffs*,

v.

TRADER JOE'S COMPANY, THE BOARD OF DIRECTORS OF TRADER JOE'S COMPANY, THE INVESTMENT COMMITTEE and JOHN DOES 1-30,

*Defendants*.

No. 1:25-cv-10212-WGY

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. Trader Joe's Succeeded on the Merits and Is Eligible for Attorney's Fees. ........ 2

B. Trader Joe's Is Entitled to Attorney's Fees ........ 3

C. Trader Joe's Requests Only a Portion of Its Reasonable Attorney's Fees. ........ 9

1. The Hours Expended Were Reasonable. ........ 10

2. The Hourly Rate Was Reasonable. ........ 12

D. Trader Joe's Is Also Entitled to Costs ........ 14

III. CONCLUSION ........ 15

## I. INTRODUCTION

Plaintiffs brought three theories of fiduciary breach to trial in this case and sought nearly $100 million in damages.[1] Ultimately, two of those theories failed outright, the third failed in large part, and Plaintiffs were awarded $715,264 in damages plus $471,957 in interest—around 1% of the amount they requested across all of their claims. That outcome, coupled with Plaintiffs' pursuit of losing theories using unsupported expert opinions, warrants a fee award for Trader Joe's.

ERISA authorizes fee awards to "either party," 29 U.S.C. § 1132(g)(1), and an award to Trader Joe's is appropriate here. Each of the *Cottrill* factors favors an award or, at the very least, is neutral: Plaintiffs' conduct reflects culpability; an award would deter similarly unsupported claims; the relative merits overwhelmingly favor Trader Joe's; and, crucially, Trader Joe's does not seek a windfall from Plaintiffs or Plan participants. Instead, it seeks an award against Plaintiffs only to offset any award the Court might grant Plaintiffs for their partial win on the recordkeeping claim, and nothing from participants' pockets. Trader Joe's request is also measured. It seeks fees only for work attributable to the two theories on which Trader Joe's succeeded in full, and it excludes work on the motion to dismiss, motion to transfer, and motion for summary judgment, as well as work done exclusively on Plaintiffs' recordkeeping theory.[2] Likewise, of its costs, Trader Joe's makes a measured request for only deposition and trial transcript services. For these reasons, explained below, the Court should grant the motion.

---

[1] Plaintiffs included additional theories in their Complaint, but they abandoned all but the three that were tried to the bench.

[2] In line with this Court's rulings on fee motions, Trader Joe's has attempted to exclude time for: travel, more than two attorneys at meetings or witness preparation sessions, attorneys attending trial who did not have speaking roles, and more than one attorney defending depositions. Vergara Decl. ¶ 16; Ex. K. Trader Joe's kept in the second attorneys' time for affirmative depositions for reasons explained in the Vergara Declaration. Vergara Decl. ¶ 16.

## II. ARGUMENT

### A. Trader Joe's Succeeded on the Merits and Is Eligible for Attorney's Fees.

Trader Joe's achieved "success on the merits" in this case and is thus eligible for a fee award. ERISA gives courts discretion to "allow a reasonable attorney's fee and costs of action to either party," 29 U.S.C. § 1132(g)(1), and the Supreme Court has held that a party seeking fees need not have prevailed outright but need only show "some degree of success on the merits." *Gross v. Sun Life Assur. Co. of Canada*, 763 F.3d 73, 76 (1st Cir. 2014) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010)). That "favorable result must be more than a trivial success or a purely procedural victory, but it is enough if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue." *Gross*, 763 F.3d at 76.[3]

Here, Trader Joe's succeeded outright on two of Plaintiffs' three liability theories: forfeitures and the investment-performance claim concerning the Growth Fund of America ("GFA"). At the close of Plaintiffs' case-in-chief, the Court granted Trader Joe's Rule 52(c) motion as to Plaintiffs' forfeiture claim, and later explained that Defendants "have not breached their fiduciary duties in their management of forfeitures." Sept. 28, 2026 Findings of Fact & Rulings of Law at 35-38, ECF No. 143 ("Order"); May 8, 2026 Docket Text, ECF No. 126. Later, on the full trial record, the Court also found for Trader Joe's on Plaintiffs' GFA investment claim, holding that "the Plaintiffs have failed to show any disloyal motivation for the Defendants' decision to retain the GFA, or that the Defendants engaged in any imprudent conduct." Order at 48. Indeed, the Court held that the Committee "engaged in a sufficiently robust process in

[3] All internal citations and quotation marks omitted unless otherwise stated.

reviewing the GFA." *Id.* More than "trivial" or "purely procedural," these victories are each a clear "success on the merits" for Trader Joe's, *Hardt*, 560 U.S. at 255, because they defeated the bulk of Plaintiffs' case.

Trader Joe's had "some success on the merits" even on Plaintiffs' third theory, their recordkeeping claim. On that claim alone, Plaintiffs sought $9.2 million in damages, but the Court ultimately awarded a $715K surcharge plus $472K in interest—allowing Plaintiffs to recover that surcharge for just over two years within the six-year class period, and using a lower benchmark than that proposed by Plaintiffs. Order at 71, 73-74. The Court noted, in its post-trial findings, that "Trader Joe's ha[d] the better of the argument" on this claim on damages. *Id.* at 71.

These wins, on two of Plaintiffs' theories and part of their third theory, qualify as "success on the merits" and support a fee award for Trader Joe's.

**B. Trader Joe's Is Entitled to Attorney's Fees.**

Trader Joe's is also entitled to attorney's fees under the *Cottrill* factors courts in this District consider when evaluating fee applications. Plaintiffs pressed their largely unsuccessful theories through trial, including through expert opinions that could not withstand scrutiny, and a fee award for Trader Joe's would deter similarly unsupported claims without burdening Plan participants. To be clear, Trader Joe's neither wants Plaintiffs to pay a fee award themselves nor anticipates that they will do so. Rather, it seeks an award only to offset any fees Plaintiffs' counsel might seek—which would eliminate the chance for Plaintiffs' counsel to receive a windfall from pursuing their unsupported claims here.

To determine whether an award is appropriate, courts in the First Circuit weigh the five factors set forth in *Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 100 F.3d 220, 225 (1st Cir. 1996), *abrogated on other grounds by Hardt*, 560 U.S. at 253-54; *Gross*, 763 F.3d at 82-83. Those factors are: (1) the losing party's degree of culpability or bad faith; (2) the losing party's capacity to pay

an award; (3) the extent to which such an award would deter other persons acting under similar circumstances; (4) any benefit the successful suit might confer on plan participants or beneficiaries generally; and (5) the relative merit of the parties' positions. Those factors are "general guidelines," and not all are required in each case. *Gray v. New England Tel. and Tel. Co.*, 792 F.2d 251, 257-58 (1st Cir. 1986); *Gross*, 763 F.3d at 83. "Because it is not a rigid test," those factors allow "for award of fees to defendants in proper cases." *Id.* Courts in this Circuit have applied these factors to award fees to ERISA defendants following trial, recognizing that while such awards may be infrequent, they are warranted where the factors favor the defendant. *R.I. Carpenters Annuity Fund v. Trevi Icos Corp.*, 533 F. Supp. 2d 246, 249-54 (D.R.I. 2008) (applying *Cottrill* and awarding fees and costs to ERISA defendant after bench trial). All five factors either weigh in favor of an award for Trader Joe's or are neutral.

***Culpability***: This factor favors a fee award because Plaintiffs' conduct in pressing meritless claims reflects a degree of culpability.[4] Litigants who pursue weak theories through trial must be presumed to understand "the potential risk of an adverse ruling." *Trevi Icos*, 533 F. Supp. 2d at 252-53 (finding plaintiff "sufficiently culpable, within the meaning of the *Cottrill* analysis, to justify a fee award"). Here, Plaintiffs pressed ahead to trial with a forfeiture theory plainly contradicted by the Plan Document, Order at 37-38; and when that theory faltered, they advanced an entirely new loss measure at oral argument that their own expert never offered,[5] May 8 Tr. 14:5-

[4] A finding of bad faith is not required; the inquiry is the "degree of the opposing parties' culpability ***or*** bad faith," and courts have held ERISA defendants are entitled to fees without such a finding. *Bd. of Trs. of Iron Workers St. Louis Dist. Council Pension Tr. v. Barnhart Crane & Rigging Co.*, 766 F. Supp. 3d 850, 854-55, 857 (E.D. Mo. 2025) (finding ERISA defendant entitled to fees even though bad-faith factor was "[a]t best . . . neutral") (emphasis added); *Trevi Icos*, 533 F. Supp. 2d at 253 n.6 (noting "a party may be culpable . . . without acting in bad faith").

[5] Plaintiffs' counsel conceded that Mr. Dyson opined only on measuring loss via unallocated forfeitures but "did not address" the issue of measuring loss via recordkeeping and administrative

15:18. *See B.R. v. Beacon Health Options*, 2018 WL 1184763, at *5 (N.D. Cal. Mar. 7, 2018) (granting ERISA defendant's fee request in part because plaintiffs "were unable to allege in the FAC any specific plan term that Defendant violated by denying coverage"). And on their GFA investment-prudence claim, among other flaws, Plaintiffs presented the Court with damages figures they and their expert knew were false: Plaintiffs' expert on the theory, Dr. Pomerantz, admitted at trial that he had "made an error in [his] damages calculation"—double-counting certain losses and including returns from before the Class Period. May 5 Tr. (Pomerantz) 21:12-23:5. But that admission came four months ***after*** Defendants flagged those very errors in their rebuttal report and months after Dr. Pomerantz conceded the errors at his deposition. *Id.* Finally, Plaintiffs' contrived $21 "prudent alternative" on their recordkeeping claim likewise lacked support from the beginning of the case: Their expert, Mr. Dyson, admitted he never identified any comparator plan that paid $21 for similar services and that $21 usually fell below the fees paid for the plans in his PlanTools reports. Order at 56-58, 60. Pursuing facially unreasonable claims, shifting theories without record support, and knowingly presenting false figures to the Court are precisely the kind of culpable conduct this *Cottrill* factor is meant to capture.

***Capacity to pay***: Any burden to pay a fee award will not fall on the named plaintiffs or Plan participants, so this factor weighs in favor of an award (or is, at least, neutral). Courts find this factor favors a moving ERISA defendant where, as here, there is no evidence that paying fees would harm the opposing party or plan beneficiaries. *See Barnhart*, 766 F. Supp. 3d at 855 (ability-to-pay factor favored defendant where there was "no evidence that payment of attorney's fees would cause any Plaintiffs harm or harm to any beneficiaries"). Nor does the mere "possibility of

---

expenses because this was purportedly "a matter for the Court to just read the plain language of the [P]lan." May 8 Tr. 14:5-15:18.

harm to participants and beneficiaries, by itself, foreclose an award"; otherwise, "no prevailing defendant could ever obtain a fee award" in such cases, "despite ERISA's language permitting otherwise." *Trevi Icos*, 533 F. Supp. 2d at 253 ("by electing to proceed with its lawsuit, Plaintiff exposed itself to the risk of an adverse fee award").

Trader Joe's does not seek payment from Plaintiffs or Plan participants out of their own pockets. Any award to Trader Joe's should be offset against a fee award the Court may grant Plaintiffs on the recordkeeping claim, leaving no burden on Plaintiffs or participants. *See Merigan v. Liberty Life Assur. Co. of Boston*, 839 F. Supp. 2d 445, 448-49 (D. Mass. 2012) (offsetting an ERISA fee award against money owed to another party to avoid "the absurdity of making A pay B when B owes A"); *Great-W. Life & Annuity Ins. Co. v. Clingenpeel*, 996 F. Supp. 1348, 1352-53 (W.D. Okla. 1998) (holding "offset is appropriate in the instant case" where both ERISA defendant and plaintiff were awarded fees).

***Deterrence***: An award here would deter other plaintiffs and their counsel from pursuing ERISA theories without evidentiary or legal support. For motions brought by ERISA defendants, courts recognize that fee awards may encourage litigants to pay "closer attention to the [evidence] that form[s] the basis of the litigation" before pressing claims. *Barnhart*, 766 F. Supp. 3d at 855-56 (deterrence factor favored fee award to ERISA defendant where plaintiffs' expert failed to engage with key evidence); *Angichiodo v. Honeywell Pension & Sav. Plan*, 2017 WL 1833586, at *3 (D. Ariz. May 8, 2017) (similar in also awarding fees to ERISA defendant); *see also Trevi Icos*, 533 F. Supp. 2d at 253 (deterrence favored award to ERISA defendant because court was "not satisfied that sufficient deterrence is provided by Plaintiff's bearing of his own fees and costs").

Here, Plaintiffs took their GFA and forfeiture theories through trial based on facts and expert opinions that could not withstand scrutiny. As to the GFA claim, the Court found that Dr.

Pomerantz evaluated only two of the Plan's investment policy criteria and admitted to assessing no qualitative factors, and it found that the Committee "engaged in a sufficiently robust process in reviewing the GFA." Order at 41-42, 48. The Court likewise found that Plaintiffs' flawed forfeiture theory rested on Mr. Dyson's view that the Committee had to follow a forfeiture-allocation process the Plan Document assigned to someone else. *Id.* at 37-38. Even on the recordkeeping theory, the Court found that Mr. Dyson did "not persuasively demonstrate" that his $21 "prudent alternative" rate was actually available to Trader Joe's, *id.* at 71-72, and it awarded a small fraction of the $9.2 million Plaintiffs demanded. Awarding fees to Trader Joe's for the claims on which it succeeded would discourage plaintiffs from bundling unsupported theories alongside a single viable one to inflate settlement pressure and litigation costs. And the need for deterrence is especially acute here. Although Trader Joe's seeks fees only for this litigation, this is the third unsuccessful lawsuit challenging the Plan's fees. The first case, *Marks v. Trader Joe's Co.*, was dismissed for failure to state a claim and the plaintiffs never amended. *See Marks v. Trader Joe's Co.*, 2020 WL 2504333, at *9 (C.D. Cal. Apr. 24, 2020). Plaintiffs' counsel here then brought the second case, *Kong v. Trader Joe's Co.*, which they stipulated to dismiss in February 2023 after failing to certify a class. *Kong v. Trader Joe's Co.*, No. 2:20-cv-05790-PA-JEM (C.D. Cal.), ECF No. 70. This lawsuit then followed. In other words, here, the requested attorney's fees would be "sufficient to deter groundless litigation without unduly chilling meritorious claims." *Angichiodo*, 2017 WL 1833586, at *3.

***Benefits for Plan participants***: Recognizing this "factor is more appropriate to a determination of whether to award fees to a plaintiff than to a defendant," *Beacon Health Options*, 2018 WL 1184763, at *9, courts award fees to ERISA defendants even where the factor is "at best neutral" or "inapplicable." *Barnhart*, 766 F. Supp. 3d at 856 (finding factor "at best neutral" and

still finding ERISA defendant entitled to fee award); *Trevi Icos*, 533 F. Supp. 2d at 253 (finding factor "inapplicable" because "the relevant inquiry is whether a benefit has been conferred, not whether . . . a harm will be inflicted" by the award). But here, Trader Joe's victories benefit Plan participants by protecting their interests. Plaintiffs' investment-prudence theory would have required the Committee to remove the GFA from the Plan lineup even though its one- and five-year returns ultimately outperformed most of its peer funds and even though it was popular with participants. TX 52 at TJSTEPHAN00004741 (showing performance); TX 355 at TJSTEPHAN00004728 (listing GFA as second-most invested fund in the Plan). Even Plaintiff Stephen Bubniak chose to invest in the GFA, agreed that its potential for "a greater reward" is what "attracted" him to it, and acknowledged that it was "the best performing fund on the plan" for the quarter shown on his statement at trial. May 5 Tr. (Bubniak) 43:12-18, 52:15-21, 53:2-5. Likewise, the Court's forfeiture ruling confirms that the Plan may use forfeitures as the governing documents allow, Order at 37-38, which preserves the flexibility Trader Joe's relies on to continue making discretionary employer contributions to participants' accounts, May 6 Tr. (Nadler) 107:15-108:9. And, more broadly, rejecting these theories protects participants from fiduciary decision-making driven by the threat of litigation rather than by participants' long-term interests.

***Relative merit***: The relative merit of the parties' positions strongly favors an award to Trader Joe's. This factor asks about "the ***relative*** merit of the parties, not whether Plaintiff's position was meritless," and it can favor a defendant even where the plaintiff's claims "were not entirely without merit" and were resolved only after a bench trial. *Trevi Icos*, 533 F. Supp. 2d at 253-54 (emphasis added). Courts find this factor favors an ERISA defendant where, for example, the plaintiffs' claims had "only a slight amount of merit" and rested on "assumptions that had no solid evidentiary support." *Barnhart*, 766 F. Supp. 3d at 856. That describes Plaintiffs' case here.

Again, the Court entered judgment for Trader Joe's on two of Plaintiffs' three theories, finding that their GFA and forfeiture claims rested on incomplete or insufficient expert opinions: Dr. Pomerantz confined his GFA analysis to two investment policy criteria and assessed no qualitative factors (among other flaws), and Mr. Dyson's forfeiture theory ignored the Plan Document's plain text. Order at 37-38, 41-42. Regardless of assigned responsibility on forfeitures, the Court emphasized Mr. Nadler's testimony about the "Committee's commitment to ensuring that the Company and the Board allocate the forfeited funds according to the terms of the Plan" and found Plaintiffs failed to show the Committee's imprudence. *Id.* at 37-38. And even on the recordkeeping claim, the Court rejected Plaintiffs' damages model, agreed that "Trader Joe's has the better of the argument" on relief, and awarded $1.2 million, far less than the $9.2 million Plaintiffs sought. *Id.* at 71-74. Trader Joe's succeeded on nearly every contested question.

### C. Trader Joe's Requests Only a Portion of Its Reasonable Attorney's Fees.

The fees Trader Joe's requests are reasonable, limited, and should be awarded up to the amount sufficient to offset Plaintiffs' potential fee award. Trader Joe's requests fees related to the two theories on which it fully succeeded—not for the recordkeeping theory on which Plaintiffs won modest damages. This is a narrow, reasonable request tied to claims on which Trader Joe's plainly won.

"The First Circuit has stated that where the relevant statute does not provide an alternate method for calculating reasonable attorney's fees, as is the case with the ERISA statute, the 'lodestar' method should be used." *Radford Trust v. First Unum Life Ins. Co. of Am.*, 399 F. Supp. 2d 3, 10 (D. Mass. 2005) (Young, J.), *rev'd in part on other grounds*, 491 F.3d 21 (1st Cir. 2007). Under that method, the "lodestar amount is calculated by multiplying a reasonable hourly rate by the total number of hours reasonably devoted to the case." *Trevi Icos*, 533 F. Supp. 2d at 254;

*Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984). After the lodestar is calculated, it "serves as a reference rate subject to additions or subtractions based on the specific circumstances of the case." *Trevi Icos*, 533 F. Supp. 2d at 254.

**1. The Hours Expended Were Reasonable.**

Courts must consider whether the hours were reasonably expended, including whether the cases were properly staffed. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* The First Circuit requires the moving party to submit "detailed contemporaneous time records" to make this showing. *Grendel's Den*, 749 F.2d at 952. Lawyers, however, are "not required to record in great detail how each minute of [their] time was expended," so long as they "identify the general subject matter of [the] time expenditures." *Hensley*, 461 U.S. at 437 n.12; *Muehe v. City of Bos.*, 569 F. Supp. 3d 80, 85 (D. Mass. 2021).

The hours Trader Joe's seeks were reasonably expended in defending against the forfeiture and GFA theories on which it succeeded. This was complex ERISA fiduciary-breach litigation that proceeded through document discovery, fact and expert depositions, summary judgment, and a six-day bench trial on three distinct theories of liability. Order at 2-5 (describing procedural history); Vergara Decl. ¶¶ 2-7. For example, defeating Plaintiffs' GFA theory required Trader Joe's to reconstruct years of the Committee's quarterly investment monitoring, including its watch-list deliberations, adviser diligence, and evaluation of alternative funds. *See* Defs.' Proposed Findings ¶¶ 136-68. That work was expensive, necessary, and ultimately dispositive: the Court held that the Committee "engaged in a sufficiently robust process in reviewing the GFA," relying on precisely the record Trader Joe's developed. Order at 44-48. Plaintiffs' GFA theory also required Trader Joe's to rebut Dr. Pomerantz's loss opinions with Dr. Heavner's expert analysis

of the GFA's risk-adjusted performance, fees, and comparators. Defs.' Proposed Findings ¶¶ 175-234. Likewise, the forfeiture claim required analysis of multiple versions of the Plan Document, Form 5500 filings, and Mr. Dyson's forfeiture-loss methodology, culminating in Trader Joe's successful motion for judgment on partial findings at the close of Plaintiffs' case. Order at 35-38; Defs.' Proposed Findings ¶¶ 250-69.

Trader Joe's has also exercised judgment by limiting its request to work attributable to the theories on which it succeeded. It seeks fees for (i) the full value of time devoted exclusively to the forfeiture or investment-performance theories; (ii) the full value of time related to Dr. Pomerantz and Dr. Heavner, as their work applied almost entirely to the investment-performance theory; (iii) two-thirds of the time spent on general litigation and motion practice, trial preparation, trial, and post-trial briefing that was common to all three theories, reflecting Defendants' success on two of three;[6] and (iv) two-thirds of general fact and expert discovery. Vergara Decl. ¶¶ 16-19; Ex. K. Trader Joe's does not seek fees for the motion to dismiss, motion to transfer, motion for summary judgment, or for any work devoted exclusively to the recordkeeping claim. Vergara Decl. ¶ 16; Ex. K. This narrow request reflects precisely the kind of "billing judgment" courts expect, *Hensley*, 461 U.S. at 434, and the excerpts of contemporaneous time entries have been

---

[6] Trader Joe's has applied a conservative apportionment to common time that applies to all three theories. The three tried theories involved different factual predicates, expert work, and loss models: the GFA theory focused on investment monitoring and fund-performance evidence, the forfeiture theory focused on Plan language and forfeiture methodology, and the recordkeeping theory focused on a separate fee benchmark and recordkeeping-loss model. Trader Joe's thus seeks the full amount for forfeiture- or GFA/investment-performance-only entries, nothing for recordkeeping-only entries, but only two-thirds of common or general litigation, motion practice, discovery, trial, and post-trial time. If, however, the Court instead finds the common time too intertwined to apportion when evaluating Plaintiffs' fee request, Trader Joe's common time should likewise be recoverable in full for purposes of this motion.

listed out by time, date, biller name, job title, and description so that the Court can readily evaluate them.[7] Vergara Decl. ¶¶ 16-18; Ex. K.

As explained in the Vergara Declaration, the case was staffed efficiently. Vergara Decl. ¶¶ 11, 20. Where possible, associates and mid-level counsel prepared first drafts and reviewed documents and case law, while partners and a senior counsel generally handled trial examinations, first-chairing expert depositions, and revisions to briefs. *Id.* ¶¶ 16, 20; Ex. K. The associates, counsel-level attorneys, staff attorney, and paralegal billed approximately 79% of the requested hours, compared to partners that billed approximately 21% of the requested hours. Vergara Decl. ¶ 20; Ex. K. Trader Joe's used paralegals and support staff, as needed. Vergara Decl. ¶ 20. That division of labor "reflects typical law firm practice and represents a reasonable effort to maximize the attorneys' comparative efficiencies." *Mardirossian v. Guardian Life Ins. Co. of Am.*, 457 F. Supp. 2d 1038, 1050 (C.D. Cal. 2006). And the participation of multiple attorneys at a six-day trial involving four expert witnesses was reasonable: "[g]iven the complexity of modern litigation, the deployment of multiple attorneys is sometimes an eminently reasonable tactic." *See Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2001).

**2. The Hourly Rate Was Reasonable.**

O'Melveny's hourly rates here were reasonable. Courts often assess rates "derived from a survey of rates prevailing in the community, as well as the 'qualifications, experience, and specialized competence' of the attorney for whom fees are requested." *Trevi Icos*, 533 F. Supp. 2d at 254; *Gay Officers Action League*, 247 F.3d at 295. Trader Joe's seeks only the hourly rates that were actually paid to O'Melveny here, Vergara Decl. ¶¶ 11, 17; and indeed, courts have held

[7] In Exhibit K, Trader Joe's has added the two columns on the right noting whether each entry falls into the full-value or two-thirds value categories, and the resulting amount requested when applying that methodology.

that the actual payment of the requested rates further "bolsters the finding that [the] rates represent the market rate." *Trevi Icos*, 533 F. Supp. 2d at 255 (quoting *Magin v. Monsanto Co.*, 2005 WL 2171175, *4 (N.D.Ill. Sept. 1, 2005)).

In this case, O'Melveny's attorneys have exceptional experience, reputation, and ability to handle complex ERISA fiduciary-breach litigation. Vergara Decl. ¶¶ 8-11 (listing each attorney's and paralegal's experience and noting, among other things, that Chambers USA has ranked O'Melveny's ERISA Litigation practice for 21 years and currently places it in Band 1); Exs. A-G. Their rates are comparable to those charged by attorneys and paralegals with similar experience. *Id.* ¶¶ 12-15; Exs. H-J. For example, a 2025 Brightflag survey of Am Law 100 billing found that Boston partners billed an average of $1,347 per hour, more than 10% above the $1,195 partner rate here. *Id.* ¶ 12; Ex. H at PDF pg. 10. That same survey found associates nationally billed an average of $620 to $1,065 per hour, encompassing the $625 associate and $895 counsel rates here. *Id.* ¶ 12; Ex. H at PDF pg. 8. And it found that non-attorney timekeepers nationally billed an average of $350 to $450 per hour, encompassing O'Melveny's $360 paralegal rate here. *Id.* ¶ 12; Ex. H at PDF pg. 8.

Prior fee awards confirm that these rates are reasonable, as courts have approved O'Melveny's rates at comparable levels. *See, e.g.*, *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 2026 WL 252575, at *2-3 (N.D. Cal. Jan. 30, 2026) (awarding fees using O'Melveny's rates of $900 to $1,400, and finding those rates "lower than prevailing rates in this district");[8] *Open Source Sec., Inc. v. Perens*, 2018 WL 2762637, at *3 (N.D. Cal. June 9, 2018), *aff'd*, 803 F. App'x 73 (9th Cir.

[8] The specific rates in *WhatsApp* were not noted in the order itself but were in the documents submitted along with the fee motion. *See WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, No. 4:19-cv-07123-PJH (N.D. Cal. Nov. 26, 2025), Dkt. 816 at 19 ("For work that O'Melveny billed to Plaintiffs on an hourly rate, they charged between $900 and $1400 per hour.").

2020) (holding O'Melveny's 2017 rates in complex, non-ERISA case were "consistent with prevailing rates in the community by comparable lawyers doing similar work"). And courts in this District have awarded fees to other firms at similar rates, including in ERISA cases. *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 512 F. Supp. 3d 196, 233, 262 (D. Mass. 2020) (noting special master in ERISA case "found the rates attributed by plaintiffs' counsel to partners, ranging from $535 to $1000 an hour, to be reasonable"). The $535 to $1000 rates found to be reasonable in *Arkansa*s in February 2020 amount to $693 to $1,295 per hour, respectively, as of August 2026 adjusted for inflation.[9] Vergara Decl. ¶ 14 (adjusting those rates for inflation).

**D. Trader Joe's Is Also Entitled to Costs.**

For the same reasons, the Court should also award Trader Joe's a portion of its costs. ERISA authorizes the Court to award "costs of action to either party," 29 U.S.C. § 1132(g)(1), and this Court has explained that the "analysis for costs is essentially the same as for attorney's fees, as the two are both governed by 29 U.S.C. § 1132(g)(1)." *Radford Tr. v. First Unum Life Ins. Co. of Am.*, 321 F. Supp. 2d 226, 259 (D. Mass. 2004), *rev'd in part on other grounds*, 491 F.3d 21 (1st Cir. 2007); *Trevi Icos*, 533 F. Supp. 2d at 249-54 (awarding fees and costs to ERISA defendant). Because each *Cottrill* factor favors an award to Trader Joe's or is neutral, *see supra* Section II.B, an award of costs is likewise warranted. And here, too, Trader Joe's request is measured: it seeks only the costs of deposition transcript services for depositions taken in this action and for deponents who actually testified at trial, totaling $7,371.33.[10] Vergara Decl. ¶ 21; Ex. L. It also requests $3,264.80 in costs for trial transcripts used in post-trial submissions.

---

[9] The court approval of the *Perens* rates also supports O'Melveny's rates here, adjusted for inflation. Vergara Decl. ¶ 13 (adjusting for inflation).

[10] Defendants propose apportioning deposition transcript costs using the same methodology proposed for apportioning attorneys' fees. Vergara Decl. ¶ 21.

Vergara Decl. ¶ 22; Ex. M. As with its fee request, Trader Joe's seeks these costs only as an offset against any fees and costs the Court may award Plaintiffs.

## III. CONCLUSION

For the reasons explained above, Defendants respectfully request that the Court award them $2,024,817 in fees, applying a two-thirds value for common time. Vergara Decl. ¶¶ 16-19; Ex. K. Alternatively, if the Court declines to apportion common time as to Plaintiffs' fee motion, Trader Joe's requests $2,864,147 in fees, in accordance with the full amounts billed for the requested time. Vergara Decl. ¶ 19; Ex. K. Defendants further request that the Court award them $10,636.13 in costs for deposition and trial transcript services. Vergara Decl. ¶¶ 21-22; Exs. L-M. In any case, Trader Joe's seeks this award only as an offset up to the amount of fees and costs awarded to Plaintiffs.

Respectfully submitted this 10th day of November, 2026.

*/s/ Catalina J. Vergara*
Catalina J. Vergara*
Noah Ickowitz*
O'MELVENY & MYERS LLP
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
T: (213) 430-6000
cvergara@omm.com
nickowitz@omm.com

Deanna M. Rice*
Gregory Comeau (BBO #661505)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC, 20006
T: (202) 383-5300
derice@omm.com
gcomeau@omm.com

William D. Pollak*
O'MELVENY & MYERS LLP
1301 Avenue of the Americas
Suite 1700
New York, NY 10019
T: (212) 326-2000
wpollak@omm.com

*Attorneys for Defendants*
* *Admitted pro hac vice*

**CERTIFICATE OF SERVICE**

I, Catalina J. Vergara, hereby certify that on this 10th day of November, 2026, a true copy of the foregoing was filed through the ECF System, which will be sent electronically, along with all relevant attachments and Exhibits, to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Catalina J. Vergara*
Catalina J. Vergara