**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BEAU STEPHAN, GEORGE STRAY, LEONARD KIRSCHLING, GEORGE PHIRIPES, RHONDA HABELL, CAMERON BASS and STEPHEN BUBNIAK, individually, and on behalf of all others similarly situated, *Plaintiffs*, <br> v. <br><br> TRADER JOE'S COMPANY, THE BOARD OF DIRECTORS OF TRADER JOE'S COMPANY, THE INVESTMENT COMMITTEE and JOHN DOES 1-30, *Defendants*. | No. 1:25-cv-10212-WGY |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND CASE CONTRIBUTION AWARDS**

## TABLE OF CONTENTS

I. INTRODUCTION ........................................ 1

II. BACKGROUND ........................................ 2

III. ARGUMENT ........................................ 3

A. Plaintiffs' Were Successful and Should Be Awarded Fees and Costs Under 29 U.S.C. § 1132(g)(1) ........................................ 3

B. The First Circuit's Discretionary Factors each Support an Award ........................................ 4

1. *Culpability* ........................................ 5

2. *Ability to Pay* ........................................ 6

3. *Deterrence* ........................................ 6

4. *Benefit to Participants* ........................................ 7

5. *Relative Merit* ........................................ 8

C. The Requested Fee, Costs, and Service Awards are Reasonable ........................................ 9

1. *Counsel's Hourly Rates reflect Prevailing Market Rates* ........................................ 10

2. *The Hours Expended Were Reasomable and Are Documented by Contemporaneous Records* ........................................ 11

D. Plaintiffs Are Entitled to Recover Their Reasonable Costs ........................................ 12

E. Named Plaintiffs are Entitled to Service Awards ........................................ 13

IV. CONCLUSION ........................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004)....................3

*Beesley v. Int'l Paper Co.*,
No. 3:06–CV–703–DRH–CJP, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014)....................14

*Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emps. v. Ray Haluch Gravel Co.*,
745 F.3d 1 (1st Cir. 2014)....................9, 10, 12

*Chambless v. Masters, Mates & Pilots Pension Plan*,
815 F.2d 869 (2d Cir. 1987)....................2, 5

*City of Riverside v. Rivera*,
477 U.S. 561 (1986)....................3

*Conner v. Mid South Ins. Agency, Inc.*,
943 F. Supp. 663 (W.D.La.1996)....................1

*Cook v. Liberty Life Assur. Co. of Bos.*,
334 F.3d 122 (1st Cir. 2003)....................8

*Coutin v. Young & Rubicam Puerto Rico, Inc.*,
124 F.3d 331 (1st Cir. 1997)....................9

*In re Fidelity/Micron Sec. Litig.*,
167 F.3d 735 (1st Cir. 1999)....................12

*Ford v. Takeda Pharmaceuticals USA, Inc.*,
No. 21-cv-10090-WGY, 2023 WL 3679031 (D. Mass. Mar. 31, 2023)....................8, 10, 12

*Gastronomical Workers Union Local 610 & Metro. Hotel Ass'n Pension Fund v. Dorado Beach Hotel Corp.*,
617 F.3d 54 (1st Cir.2010)....................3

*Grendel's Den, Inc. v. Larkin*,
749 F.2d 945 (1st Cir. 1984)....................9, 10, 11, 12

*Gross v. Sun Life Assur. Co. of Canada*,
763 F.3d 73 (1st Cir. 2014)....................*Passim*

*Hardt v. Reliance Standard Life Ins. Co.*,
560 U.S. 242 (2010) ....................1, 3

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)....................2, 11

*Hill v. State St. Corp*.,
No. 09-12146, 2014 U.S. Dist. LEXIS 179702 (D. Mass. Nov. 26, 2014) ....................12

*Jackson v. New England Biolabs, Inc.*,
No. CV 23-12208-RGS, 2025 WL 2256261 (D. Mass. Aug. 7, 2025)....................13, 14, 15

*Jenkins v. Green Bay Packaging, Inc*.,
39 F.3d 1192 (10th Cir. 1994) ....................5

*Kayes v. Pacific Lumber Co*.,
51 F.3d 1449 (9th Cir. 1995) ....................2, 5

*Kifafi v. Hilton Hotels Ret. Plan*,
999 F. Supp. 2d 88 (D.D.C. 2013)....................15, 16

*Kruger v. Novant Health, Inc.,*
No. 1:14CV208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016)....................14, 15

*Krutchen v. Ricoh USA, Inc*.
No. 23-1928 (3d Cir. 2024)....................11

*Landro v. Glendenning Motorways, Inc*.,
625 F.2d 1344 (8th Cir. 1980) ....................5

*Lauture v. A.C. Moore Arts & Crafts, Inc*.,
2017 WL 6460244 (D. Mass. June 8, 2017)....................13

*Mem'l Health Sys. v. Aetna Health, Inc*.,
730 F.Supp.2d 1289 (D. Colo. 2010)....................2

*Monteiro v. Children's Hosp. Corp.* and *Norton v. Mass General Brigham Inc*.
22-10069 (D. Mass Jan. 18, 2022 ....................11

*Murray v. Grocery Delivery E-Servs. USA Inc*.,
55 F.4th 340 (1st Cir. 2022)....................13

*Nadeau v. Helgemoe*,
581 F.2d 275 (1st Cir. 1978)....................2

*Ruckelshaus v. Sierra Club*,
463 U.S. 680 (1983)....................................................................................................1

*Scovil v. FedEx Ground Package Sys., Inc.*,
No. 1:10-CV-515-DBH, 2014 WL 1057079 (D. Me. Mar. 14, 2014)..........................................13

*Smith v. CMTA-IAM Pension Trust*,
746 F.2d 587 (9th Cir. 1984) ..........................................................................................2, 5

*Spence v. American Airlines, Inc.*,
No. 4:23-cv-00552 (N.D. Tex.) ..........................................................................................3

*Torres-Rivera v. O'Neill-Cancel*,
524 F.3d 331 (1st Cir. 2008)..........................................................................................11

*Tussey v. ABB, Inc.*,
850 F.3d 951 (8th Cir. 2017). ..........................................................................................15, 16

**STATUTES**

29 U.S.C. § 1132(g)(1) ..........................................................................................1, 2, 12

42 U.S.C. § 1988..........................................................................................2, 3

**Other Sources**

The Employee Retirement Income Security Act of 1974 ....................................................*Passim*

## I. INTRODUCTION

After a six-day bench trial, this Court held that the Defendant fiduciaries breached their duty of prudence, duty of loyalty, and duty to monitor, with respect to the recordkeeping fees paid by the participants of the Trader Joe's Company Retirement Plan. The Court entered judgment for the Plaintiffs, imposing a surcharge of $715,264.00 together with $471,957.00 in prejudgment interest. Plaintiffs now move for an award of reasonable attorneys' fees and costs.

ERISA § 502(g)(1) provides a court with discretion to "allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). A claimant "must show 'some degree of success on the merits' before a court may award attorney's fees." *Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242, 255 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). Success means "the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue." *Id.* (cleaned up). Here, Plaintiffs had more than "some degree" of success. Plaintiffs tried their claims to judgment, established multiple fiduciary breaches, proved a loss to the Plan, and obtained a judgment of nearly $1.2 million for the benefit of a class of thousands of participants in the Trader Joe's Plan. Plaintiffs obtained a further benefit for the class, akin to injunctive relief, by obtaining a Court Order making clear that the fiduciaries of the Trader Joe's Plan (as well as the fiduciaries of other retirement plans), need to affirmatively act to ensure that the fees paid by the Plan are reasonable and market-competitive.

Like the fee-shifting provision of 42 U.S.C. § 1988, "[t]he purpose of [ERISA § 502(g)(1)] is to ensure that competent counsel will be available to help enforce the retirement and pensions rights of participants and beneficiaries of ERISA plans." *Conner v. Mid South Ins. Agency, Inc.*,

943 F. Supp. 663, 665 (W.D.La.1996) (quoting *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 872 (2d Cir. 1987)) ("attorney fee provisions should be liberally construed to protect the statutory purpose of vindicating retirement rights, even when small amounts are involved"). As set forth below, every consideration that guides this Court's discretion in awarding fees and costs under this provision favors awarding Plaintiffs' their requested fees and costs.

## II. BACKGROUND

The Court is familiar with the procedural history and background of the litigation as set forth in this Court's Findings of Fact and Rulings of Law, incorporated herein by reference. *See* Dkt. No. 143 ("Opinion").

## III. ARGUMENT

### A. Plaintiffs Were Successful and Should Be Awarded Fees and Costs Under 29 U.S.C. § 1132(g)(1).

ERISA provides that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). As a general rule, ERISA plaintiffs are entitled to reasonable attorneys' fees as a prevailing party "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–279 (1st Cir. 1978) (emphasis added)). That is because an "important aspect" of ERISA is "to afford [participants and beneficiaries] effective access to federal courts." *Kayes*, 51 F.3d at 1468 (quoting *Smith,* 746 F.2d at 589); *Mem'l Health Sys. v. Aetna Health, Inc.*, 730 F.Supp.2d 1289, 1292 (D. Colo. 2010) (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (internal citation, ellipses, and quotation marks omitted)).

In *Hardt v. Reliance Standard Life Ins. Co*., the Supreme Court expressly found that a court has discretion to award fees and costs "as long as the fee claimant has achieved some degree of success on the merits." 560 U.S. 242, 244–245, 130 S.Ct. 2149, 2152, 176 L. Ed. 2d 998 (2010). A claimant satisfies that threshold so long as the court "can fairly call the outcome of the litigation some success on the merits," and not just a "trivial success on the merits" or a "purely procedural victor[y]." *Id.* at 560 U.S. at 255, 130 S.Ct. at 2158. Notably, it is to be expected with these types of statutory fee awards that the attorneys' fees may well exceed the plaintiff's monetary award. In *City of Riverside v. Rivera*, 477 U.S. 561 (1986), the Supreme Court held that a reasonable attorney's fee award under 42 U.S.C. § 1988 need not be proportional to the monetary recovery obtained, because such litigation vindicates important rights and serves broader public interests beyond the damages awarded to an individual plaintiff. *Id*. at 564-65 (affirming an attorney's fee award of $245,456 despite a damages recovery of only $33,350). In *Spence v. American Airlines, Inc*., No. 4:23-cv-00552 (N.D. Tex.), the court awarded plaintiffs $4,596,287.50 in attorneys' fees on February 10, 2026, following a bench trial involving ERISA fiduciary-breach claims, despite the fact that there was no monetary recovery for the class. *Spence*, Dkt. No. 188 (awarding fees where the plaintiffs prevailed on a single breach of loyalty claim resulting in certain injunctive relief).

The First Circuit adheres to the *Hardt* standard, describing qualifying success as a "merits outcome [that] produces some meaningful benefit for the fee-seeker." *Gross v. Sun Life Assur. Co. of Canada*, 763 F.3d 73, 76–77 (1st Cir. 2014) (quoting *Gastronomical Workers Union Local 610 & Metro. Hotel Ass'n Pension Fund v. Dorado Beach Hotel Corp.*, 617 F.3d 54, 66 (1st Cir.2010). Here, Plaintiffs readily satisfy that standard. Plaintiffs tried their recordkeeping claims through a six-day bench trial and obtained a final judgment establishing that Defendants breached their

fiduciary duties of prudence and loyalty and the duty to monitor. *See* Opinion at 55, 71. This was not a trivial or mere procedural victory. The judgment orders restoration to the Plan of $715,264.00 in overpaid fees, plus $471,957.00 in prejudgment interest. *Id.* at 74. A recovery of nearly $1.2 million for the Plan's participants is not merely "some" success on the merits; it is a significant victory achieved in heavily contested litigation against well-funded Defendants and a high-powered defense firm.

**B. The First Circuit's Discretionary Factors Each Support an Award**

The First Circuit has identified the following five factors to be considered in awarding fees:

(1) the degree of the opposing parties' culpability or bad faith;

(2) the ability of the opposing parties to satisfy an award of attorneys' fees;

(3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;

(4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

(5) the relative merits of the parties' positions.

*See Gross v. Sun Life Assur. Co. of Canada*, 763 F.3d 73, 82–83 (1st Cir. 2014). These factors are "exemplary rather than exclusive," no single factor is decisive, and a plaintiff who is eligible "may not be denied a fee award based solely on the fact that she did not have greater success." *Id.* at 82-83, 85-86.

The *Gross* factors must be applied in light of the purposes of ERISA, where "like the Civil Rights Acts of 1871 and 1964, and the Labor-Management Reporting and Disclosure Act, is remedial legislation which should be liberally construed in favor of protecting participants in

employee benefits plans." *Kayes v. Pacific Lumber Co*., 51 F.3d 1449, 1468 (9th Cir. 1995) (quoting *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984) (reversing denial of fees to plaintiffs)). Section 1132 "has been broadly construed to effectuate congressional intent." *Jenkins v. Green Bay Packaging, Inc*., 39 F.3d 1192 (10th Cir. 1994) (remanded to district court for a computation of fees for plaintiffs who were the prevailing party). Further, § 1132 "should be construed liberally in favor of those persons it was meant to benefit and protect, namely, participants… who are specifically permitted… to sue in federal courts to enforce their rights under their… plans." *Id*. (emphasis added). It "should be read broadly to mean that a plan participant… 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Id*. (citing *Landro v. Glendenning Motorways, Inc*., 625 F.2d 1344, 1356 (8th Cir. 1980).

Likewise, "attorney fee provisions should be liberally construed to protect the statutory purpose of vindicating retirement rights, even when small amounts are involved." *Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869, 872 (2d Cir. 1987). As described below, the *Gross* factors, coupled with the policy reasons in favor of awarding fees to ERISA plaintiffs who have some success on the merits, overwhelmingly favor awarding Plaintiffs their requested attorneys' fees and costs.

**1. *Culpability***

The Court found that Defendants breached fiduciary duties that are "among the highest known to the law." Opinion at 30. Plaintiffs need not show that the Defendants "exhibited bad faith" or "acted with an especially high degree of culpability"; conduct that is "sufficiently culpable" counts in the claimant's favor. *Gross*, 763 F.3d 73 at 83. Here, this Court found that, "[a]t the very least, a hypothetical fiduciary would have engaged in some negotiations with the

recordkeeper for better fees" and "would also have engaged in some competitive market research to determine what potential recordkeepers are offering in fees per Plan participant." Opinion at 69. The Court found that "an actual market check would have revealed, as Plaintiffs argue[d], that the trend in the industry has been a decrease in recordkeeping fees." *Id*. at 70. The Court explained that "a hypothetical fiduciary would have performed, at the very least, some competitive market research to increase the chances of a reduced recordkeeping fee," which was not done here, and that "Defendants caused losses to the Plan participants by breaching their fiduciary duties of prudence and loyalty." *Id*.

The express findings of the Court readily satisfy the culpability factor.

**2. *Ability to Pay***

Trader Joe's is a national grocery chain sponsoring a Plan with more than $3.2 billion in assets. *See* Opinion at 11. In 2019 alone, the Company wrote a check for discretionary contributions to the Plan in the amount of $127,142,947. There is no doubt that Defendants have sufficient assets to pay Plaintiffs' requested attorneys' fees. This factor weighs in favor of awarding fees.

**3. *Deterrence***

Awarding the requested fees and costs will deter these Defendants, and other retirement plan fiduciaries, from ignoring their significant duties going forward because they will see that breaching their duties can result not only in a monetary judgment to their plans but also result in liability for the fees and costs of the attorneys prosecuting the claims on behalf of the plans. The Court's findings as to Defendants' breaches reinforces the incentive for plan sponsors to ensure a prudent and loyal process for monitoring 401(k) plan recordkeeping fees. *See* Opinion at 55. Indeed, the retirement plan industry has taken notice of the outcome of this case with multiple

industry commentators warning fiduciaries to ensure their plans conduct competitive market bidding for recordkeeping services. *See* Gyandoh Decl. at ¶ [44]; Ex.1 (collecting articles reflecting industry reactions to the verdict). An award of fees will support the deterrent effect of Plaintiffs' successful prosecution of these recordkeeping claims and will further encourage prudent fiduciary behavior.

**4. *Benefit to Participants***

Unlike a single-claimant benefits suit, this action was prosecuted on behalf of a certified class, and the recovery flows to the Plan for the benefit of tens of thousands of participants. *See* Opinion at 11. A class recovery restoring overpaid fees to the Plan is the paradigmatic common benefit. The outcome of this suit benefits not just the current participants, but also future Plan participants as it is likely Trader Joe's will appropriately monitor fees going forward. Also, based on industry commentary, the result here should inure to the benefit of plan participants throughout the country as fiduciaries seek to avoid similar liability. The First Circuit has recognized that conferring a benefit on participants generally or resolving "a significant ERISA legal question" satisfies this factor. *Gross*, 763 F.3d 73 at 85. While there is no question that ERISA requires Plan fiduciaries to monitor fees, the outcome here gives clear guidance to fiduciaries to perform some form of competitive bidding and/or active fee negotiation to ensure the fees being paid are reasonable.

Awarding attorneys' fees here would also benefit retirement plan participants generally by encouraging experienced ERISA counsel to take up difficult, time-consuming, costly and complicated cases. *See Gross*, 763 F.3d at *82 ("Without some prospect of compensating their attorneys along the way, ERISA litigants may face difficulty both securing counsel initially and retaining counsel as proceedings move forward."). This Court has previously recognized the

complex nature of ERISA claims. *See Ford v. Takeda Pharmaceuticals USA, Inc.*, No. 21-cv-10090-WGY, 2023 WL 3679031 (D. Mass. Mar. 31, 2023) ("[ERISA] subject matter is highly technical, entailing facts about prudent investment practices, industry best practices, fiduciary practices, recordkeeping practices, and complex financial matters, requiring the use of multiple experts for both plaintiffs and defendants.").

Accordingly, for multiple reasons, Plaintiffs satisfy this factor.

**5. *Relative Merit***

Plaintiffs prevailed on the recordkeeping claims they tried, obtaining a judgment and a seven-figure recovery. *See* Opinion at 74. The relative merit of the parties' positions on those claims plainly favors Plaintiffs. That Plaintiffs did not prevail on every theory does not alter the analysis; even where the merits are "in equipoise," the balance of the factors can justify an award, and here the first four factors decisively favor Plaintiffs. *Gross*, 763 F.3d 73 at 85–86 ("Gross may not be denied a fee award based solely on the fact that she did not have greater success.").

Plaintiffs' success on their recordkeeping claim impacts a broad class of participants. Further, Plaintiffs investment and forfeiture-related claims survived summary judgment and certainly were not found to have been brought for an improper purpose. Indeed, the law surrounding Plaintiffs' forfeiture claim is relatively undeveloped, and this is believed to have been the first case for such claims to be tested at trial.

Although fee awards under ERISA are "wholly discretionary" and not "virtually automatic," the discretionary factors here point in one direction. *See Cook v. Liberty Life Assur. Co. of Bos.*, 334 F.3d 122, 123–124 (1st Cir. 2003). Plaintiffs are entitled to a reasonable award of fees and costs.

### C. The Requested Fee, Costs, and Service Awards are Reasonable

The fee calculation in an ERISA fee-shifting case follows "the familiar lodestar approach." *Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emps. v. Ray Haluch Gravel Co.*, 745 F.3d 1, 5 (1st Cir. 2014). The lodestar is "determined by multiplying the total number of hours reasonably spent by a reasonable hourly rate," *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950–951 (1st Cir. 1984). It is "the strongly preferred method" for setting fees in fee-shifting cases. *Coutin v. Young & Rubicam Puerto Rico, Inc*., 124 F.3d 331, 337 (1st Cir. 1997). The Court may then adjust the lodestar upward or downward, in much the same way that a fee multiplier is common in regard to ERISA class settlements. Given the substantial result in the face of a vigorous defense, application of a 1.25 multiplier here is both modest and reasonable.

As detailed in the Declaration of Mark K. Gyandoh, Plaintiffs' counsel have dedicated a total of more than 2,900 hours to this litigation with a lodestar exceeding $2.3 million. After carefully reviewing all daily time entries, Plaintiffs' counsel have reduced their hours to account for tasks that were related specifically to the investment claim and the forfeiture claim, including time spent formulating those claims, working on expert reports, expert depositions, and trial testimony. As a result, Plaintiffs have approximately 13% of the total time/lodestar.

Accordingly, Plaintiffs request fees calculated under the lodestar method — the reasonable hours counsel expended multiplied by reasonable hourly rates — in the amount of $2,344,376.00, and reimbursement of $66,030.45 in litigation costs. Plaintiffs also seek service awards for each of the seven Named Plaintiffs. Plaintiffs seek $15,000 for five Named Plaintiffs who were deposed, and $20,000 for two named Plaintiffs who were deposed and testified at trial. Those amounts are documented in the accompanying Declaration of Mark Gyandoh ("Gyandoh Decl.") and Peter A. Muhic ("Muhic Decl."). For the reasons set forth below, the motion should be granted

Plaintiffs' requested fees and costs of $2,996,500 is based on that method and is reasonable in every respect.[1]

### 1. ***Counsel's Hourly Rates reflect Prevailing Market Rates.***

A reasonable hourly rate is calculated "according to the prevailing market rates in the relevant community . . . for similar services by lawyers of reasonably comparable skill, experience and reputation." *See Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 955 (1st Cir. 1984). The rate is "benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence." *Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emps*., 745 F.3d at 5. As detailed in the accompanying Declaration of Mark K. Gyandoh, the rates sought here, from $275 to $1025 are consistent with rates charged by attorneys of comparable experience litigating complex ERISA class actions. *See* Gyandoh Decl. at ¶¶ [64]

In *Ford* this Court approved the following rates in a similar ERISA class action case:

$1,370 for attorneys with at least 25 years of experience;
$1,165 for attorneys with 15–24 years of experience;
$840 for attorneys with 5–14 years of experience;
$635 for attorneys with 0–4 years of experience;
$425 for paralegals and law clerks

*See Ford*, 2023 WL 3679031 at *2. Plaintiffs request here are in the same range or below those approved *Ford*.

[1] This includes a 1.25% modifier to Plaintiffs' lodestar amount. Where "there is high risk and the likelihood of receiving little or no recovery is a distinct possibility; in such cases, it is common for a court to consider a multiplier of more than two as reflecting a reasonable sum to compensate the attorneys for the risk of nonpayment." *Kondash v. Citizens Bank, Nat'l Ass'n*, No. 18-cv-00288, 2020 WL 7641785 at *5 (D.R.I. Dec. 23, 2020). Lodestar multipliers above Class Counsel's requested 1.25% multiplier have been found appropriate in cases in this district and in ERISA cases across the nation. *See, e.g.*, *Boston and Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890, 894-95 (1st Cir. 1985) ("[A] fee equal to six times the lodestar" is not unreasonable in light of "percentage of the recovery" considerations such as incentivizing "the ablest practitioners" to provide services and to enable plaintiffs to "avoid legal fees unless the attorneys' efforts actually increase the […] ultimate benefit.").

Capozzi Adler's rates have been approved by other courts in this District. In *Monteiro v. Children's Hosp. Corp.* and *Norton v. Mass General Brigham Inc*. the rates of lead counsel from Capozzi Adler were approved by other courts in this District in 2025. *See* Gyandoh Decl. at ¶¶ [74]. More recently, the fees Capozzi Adler seeks here were approved by the Eastern District of Pennsylvania in *Krutchen v. Ricoh USA, Inc*. in August of this year. *See* Gyandoh Decl. at ¶¶ [74]. The rates Plaintiffs seek here are also commensurate or below rates charged by ERISA practitioners nationwide as evidenced by declarations submitted in fee petitions by other plaintiffs' firms. *See* Gyandoh Decl. at ¶¶ [61-67]. Plaintiffs' requested rates are also below those charged by ERISA defense counsel. *See* Gyandoh Decl. at ¶¶ [70]. Likewise, lead counsel Peter Muhic's rates of $1025 per hour have been approved in other cases: *See* Muhic Decl. at ¶[9].

Altogether, Plaintiffs rates are reasonable and commensurate with ERISA attorney rates in the District of Massachusetts and nationwide.

### 2. *The Hours Expended Were Reasonable and Are Documented by Contemporaneous Records*

The lodestar includes only hours "reasonably expended," and counsel must exercise billing judgment to exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939–1940, 76 L. Ed. 2d 40 (1983); *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008). The party seeking fees bears the burden of supporting the hours claimed, and inadequate documentation warrants a reduction. *Hensley*, 461 U.S. at 434, 103 S. Ct. at 1939. In this Circuit, "the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance." *Grendel's Den, Inc*., 749 F.2d at 952. Here, Plaintiffs' counsel kept detailed, contemporaneous time records, which are submitted with this motion. *See* Gyandoh Decl. at ¶¶ [56]. Plaintiffs have also exercised substantial billing judgment by combing

through their billing records to remove duplicative and unnecessary entries, and entries relating to the GFA and forfeiture claims. Plaintiffs cut 326 hours from their records- from 2,483 to 2,157- a reduction of 13.12%. *Id.* at [55].

The 2157.2 hours claimed reflect the work reasonably required to investigate the Plan's fiduciary practices, draft and file the complaint, conduct extensive discovery including defending the depositions of all seven Named Plaintiffs, retain experts and submit expert reports, litigate pre-trial motions, and try the case to judgment over six trial days. *See* Gyandoh Decl. at ¶¶ [54].

**D. Plaintiffs Are Entitled to Recover Their Reasonable Costs.**

Plaintiffs request litigation costs in the amount of $66,030.45. *See* Gyandoh Decl. at ¶¶ [50-51]. Section 1132(g)(1) authorizes an award of "costs of action" in addition to a reasonable fee. 29 U.S.C. § 1132(g)(1). Reasonable litigation costs are recoverable as part of an ERISA fee-shifting award, including such items as attorney travel. *Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emps*., 745 F.3d at 7–8. "Lawyers who recover a common fund for a class are entitled to reimbursement of litigation expenses that were reasonably and necessarily incurred in connection with the litigation." *Hill v. State St. Corp*., No. 09-12146, 2014 U.S. Dist. LEXIS 179702, at *53 (D. Mass. Nov. 26, 2014) (Dein, J.) (citing *In re Fidelity/Micron Sec. Litig*., 167 F.3d 735, 737 (1st Cir. 1999)). The Court applies "a . . . test of reasonableness and necessity to determine what expenses should be awarded." *Grendel's Den, Inc*, 749 F.2d at 951. The costs Plaintiffs seek were reasonably and necessarily incurred in prosecuting this action such as deposition and transcript costs, electronic-discovery expenses, and travel. This Court approved similar costs in *Ford* case stating "The Court finds that Class Counsel's expenses of $62,158.69 are reasonable, and accordingly approves Class Counsel's request for reimbursement of litigation expenses." 2023 WL 3679031 at *3.

Plaintiffs' costs are itemized in the accompanying Declaration of Mark K. Gyandoh. Gyandoh Decl. at ¶¶ [50]. Plaintiffs have exercised discretion to remove any unnecessary or duplicative costs. *Id.* Thus Plaintiffs only seek costs that were essential to developing the fiduciary-breach record and proving the Plan's loss at trial, and they should be awarded in full.

**E. Named Plaintiffs are Entitled to Service Awards**

Plaintiffs request modest service awards for the Named Plaintiffs who worked to advance Plaintiffs' claims. For Plaintiffs Beau Stephan and Steven Bubniak, both of whom testified at trial Plaintiffs seek service awards of $20,000 each. For the other five Plaintiffs who were all deposed by Defense counsel, Plaintiffs seek $15,000 for a total of $115,000.

Service awards are specifically permitted in the First Circuit. *See Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340, 353 (1st Cir. 2022) (rejecting categorical challenge to propriety of incentive awards for named plaintiffs in class action cases). In evaluating a requested incentive award, "courts consider: (1) the steps these individuals have taken to protect the interests of the class; (2) the degree to which the class has benefited from those actions; (3) the amount of time and effort they have expended in pursuing the litigation; and (4) any negative effects that they have risked." *Jackson v. New England Biolabs, Inc.*, No. CV 23-12208-RGS, 2025 WL 2256261, at *3 (D. Mass. Aug. 7, 2025) (quoting *Lauture v. A.C. Moore Arts & Crafts, Inc.*, 2017 WL 6460244, at *3 (D. Mass. June 8, 2017). "Because a named plaintiff is an essential ingredient of any class action, an incentive or service award can be appropriate to encourage or induce an individual to participate in the suit." *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-CV-10219-JGD, 2017 WL 6460244, at *2 (D. Mass. June 8, 2017) (quoting *Scovil v. FedEx Ground Package Sys., Inc.*, No. 1:10-CV-515-DBH, 2014 WL 1057079, at *6 (D. Me. Mar. 14, 2014)).

Here, the Named Plaintiffs have done everything possible to warrant receiving a service award. Each Plaintiff submitted a declaration indicating that they:

- reviewed the Complaint and submitted information prior to the initiation of suit;
- responded to Defendants' document requests;
- responded to Defendants' interrogatories;
- stayed in contact with their attorneys to stay informed about the case;
- reviewed documents sent by their attorneys;
- prepared for and sat for a several hour-long deposition.

Gyandoh Decl. at ¶¶ [91-97], Exhibits 13-19, at ¶ 9. In addition, Plaintiffs Beau Stephan and Stephen Bubniak also prepared for and testified at trial. *Id.* Exhibits 14, 19, at ¶ 3.

All of this work constitutes "steps to protect the interests of the class." *See Jackson*, 2025 WL 2256261, at *3. Likewise, the class benefited from their work with a $1.2 million judgment that will be distributed amongst all class members. *Id.* Each Plaintiff also states that they spent a "substantial amount of time" working on this litigation as evidenced by their participation in written discovery, preparing for and sitting for depositions, and for two of the named Plaintiffs, preparing for and testifying at trial. Finally, every Named Plaintiff is publicly associated with a class action lawsuit against their former employer, which itself constitutes a risk of negative perceptions by potential future employers, particularly in the retail industry. Importantly, these individuals risked their reputations and alienation from employers "in bringing an action against a prominent company in their community." *Kruger v. Novant Health, Inc.,* No. 1:14CV208, 2016 WL 6769066, at *6 (M.D.N.C. Sept. 29, 2016) (approving $25,000 service awards); *Beesley v. Int'l Paper Co*., No. 3:06–CV–703–DRH–CJP, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014) ("ERISA litigation against an employee's current or former employer carries unique risks and fortitude, including alienation from employers or peers."). The Named Plaintiffs satisfy each of the *Jackson* factors.

In *Jackson*, the court reduced the requested service award of $20,000 to $15,000, noting that the Plaintiffs there had not participated in *any* discovery at the point the case settled. *See Jackson*, 2025 WL 2256261, at *3. In contrast, the Named Plaintiffs here have done everything possible to advance the claims of the Class by fully participating in every aspect of discovery and trial. Indeed, there is little else the Named Plaintiffs could have done additionally to represent the interests of the Class which justifies a higher service award here.

In *Tussey v. ABB, Inc*., the Eighth Circuit approved service awards of $25,000 for the three named plaintiffs where plaintiffs won an ERISA breach of fiduciary duty case at a bench trial. 850 F.3d 951 (8th Cir. 2017). The court held that such awards were permissible because they "compensate lead plaintiffs for their work and the benefit they have conveyed on the rest of the class." *Id.* at 961–962. Likewise, in *Kifafi v. Hilton Hotels Ret. Plan*, the court approved a service award of $50,000 for a named plaintiff who prevailed at summary judgment. 999 F. Supp. 2d 88, 105 (D.D.C. 2013).

Here, Plaintiffs seek $115,000 in service awards which includes $20,000 for Plaintiffs Stephan and Bubniak who testified at trial and $15,000 for the five other Class Representatives who each sat for full depositions. These awards represent 9.68% of the total damages awarded by the Court. As stated above, these awards are appropriate because the Class Representatives fully participated at every step in the litigation, and assumed reputational, professional, and financial risks on behalf of the entire Class. The Class would receive no payments at all were it not for the efforts of the Class Representatives. Class representatives in ERISA class actions lawsuits that settle routinely receive service awards in the to $25,000. *See Kruger*, 2016 WL 6769066, at *6 (collecting cases awarding $25,000 service awards in ERISA cases). Often, these cases settle early in the litigation before Plaintiffs have to invest considerable time and effort to respond to discovery

requests, prepare for and sit for depositions, and testify at trial. It would be wholly inequitable to permit service awards for class representatives in cases that settle early but withhold them from representatives who put in the work to see cases through to the end, including testifying at trial. The amounts requested here fall into the mid to upper ranges of service awards and reflect the efforts the Class Representative put in, the benefits they obtained for the Class, and the risks they assumed.

While there are relatively few ERISA cases tried to verdict to use as guidance, courts in both *Tussey* and *Kifafi* approved class representative service awards to be paid out of damages the court assigned to the defendants in those cases. *See Tussey*, 850 F.3d at 961-962; *Kifafi*, 999 F. Supp. 2d at 105. The Court should do the same here.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for an Award of Attorneys' Fees and Costs, award attorneys' fees in the amount of $2,930,470.00 and costs in the amount of $66,030.45, and grant such further relief as the Court deems just and proper.

Dated: November 10, 2026

Respectfully submitted,

*/s/ Mark K. Gyandoh*

Mark K. Gyandoh, Esquire
(admitted *pro hac vice*)
James A. Maro, Esquire
(admitted *pro hac vice*)
James A. Wells, Esquire
(admitted *pro hac vice*)
Giulia T. Conboy, Esquire
(admitted *pro hac vice*)
**CAPOZZI ADLER, P.C.**
312 Old Lancaster Road
Merion Station, PA 19066
T: (215) 530-1603

Email: markg@capozziadler.com
jamesm@capozziadler.com
jayw@capozziadler.com
giuliac@capozziadler.com
Tel: (610) 890-0200
Fax: (717) 232-3080

Peter A. Muhic
(*Admitted Pro Hac Vice*)
**MUHIC LAW LLC**
923 Haddonfield Road
Suite 300
Cherry Hill, NJ 08002
Telephone: (856) 324-8252
Email: peter@muhiclaw.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2026, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By: /s/ *Mark K. Gyandoh*
Mark K. Gyandoh, Esq.