EXHIBIT 5

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| MARK NORTON, DASHKA LOUIS, CAROLINE MITCHELL, NANCY BARTLETT and AZILDA CORDAHI, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MASS GENERAL BRIGHAM INCORPORATED, THE BOARD OF DIRECTORS OF MASS GENERAL BRIGHAM INCORPORATED, THE INVESTMENT COMMITTEE OF MASS GENERAL BRIGHAM INCORPORATED and JOHN DOES 1-30.<br><br>Defendants. | ) | **CIVIL ACTION NO.:**<br>1:22-cv-10045-MJJ |

**DECLARATION OF MARK K. GYANDOH IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF PLAN OF ALLOCATION, AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND FOR PLAINTIFFS' CASE CONTRIBUTION AWARDS**

I, Mark K. Gyandoh, Esquire, as Class Counsel, declare as follows:

1. I am a member in good standing of the bars of the Commonwealth of Pennsylvania and state of New Jersey, and have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently thereto.

2. I am a partner and chair of the Fiduciary Practice Group at Capozzi Adler, P.C., and have been the lead attorney for my firm in this litigation representing Plaintiffs and the proposed Settlement Class in the above-captioned action.

***Procedural History***

3. Following several months of investigation, including engaging consulting experts, Plaintiffs, Mark Norton, Dashka Louis, Caroline Mitchell, Nancy Bartlett, and Azilda Cordahi, filed a Complaint on January 13, 2022 against several Defendants (ECF No. 1) and an Amended Complaint ("AC") on April 18, 2022 (ECF No. 22). The Defendants are Mass General Brigham Incorporated ("Mass General"), the Board of Directors of Mass General Brigham Incorporated (the "Board"), and the Investment Committee of Mass General Brigham Incorporated (the "Committee"). *See id*.

4. Plaintiffs alleged, *inter alia*, that throughout the Class Period, Defendants violated their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") by, among other things, allowing assets of the consolidated 403(b) Program of Partners HealthCare and Member Organization Plan prior to May of 2020, and now known as the Consolidated 403(b) Program of Mass General Brigham and Member Organization (the "Plan") to be wasted on unreasonable recordkeeping and administration ("RKA") expenses.

5. On May 16, 2022, Defendants filed their Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 22).

6. On May 31, 2022, Plaintiffs filed their Memorandum of Law in Opposition to Defendants' Motion to Dismiss (ECF No. 29). Defendants filed a Reply in support of their motion to dismiss on June 17, 2022 (ECF No. 33).

7. On March 15, 2023, the Court denied Defendants' motion to dismiss (ECF No. 69).

8. On April 17, 2023, Defendants filed a Motion to Certify Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b), and their supporting Memorandum (ECF Nos. 72, 73).

9. Defendants filed their Answer to Plaintiffs' Amended Complaint on April 19, 2023 (ECF No. 74).

10. Plaintiffs filed their Memorandum of Law in Opposition to Defendants' Motion to Certify Interlocutory Appeal on May 1, 2023 (ECF No. 75). Defendants filed their Reply on May 22, 2023 (ECF No. 78).

11. On July 20, 2023, the Court issued its Order Denying Motion to Certify Interlocutory Appeal (ECF No. 82).

12. On August 15, 2023, the Parties filed a Joint Motion to Stay Pending Mediation (ECF No. 87). The Court granted the stay on August 15, 2023 (ECF No. 88).

13. The Parties scheduled mediation before a third-party mediator, David Geronemus, Esquire, of JAMS on November 16, 2023.

14. On November 30, 2023, the Parties filed a Joint Status Report and Motion to Extend Stay, stating they were unsuccessful in resolving the matter (ECF No. 90). The Court granted the stay on December 1, 2023 (ECF No. 91).

15. On January 2, 2024, the Parties filed a Joint Status Report and Motion to Extend Stay, stating that they had continued to engage in settlement discussions (ECF No. 92). The Court granted the stay on January 3, 2024 (ECF No. 93). The Parties participated in a second scheduled mediation with David Geronemus on January 24, 2024.

16. On February 6, 2025, the Parties filed a Joint Status Report, informing the Court that a settlement had been reached in principle and requested the stay remain in effect until March 13, 2025, at which time Plaintiffs would file their unopposed motion for preliminary approval (ECF No 114). The Court approved the request to continue the stay. *See* ECF No. 115.

17. On April 17, 2025, Plaintiffs filed the Unopposed Motion for Preliminary Approval (ECF Nos. 121-122).

18. This Court issued its Order Granting Preliminary Approval (ECF No. 123) on May 5, 2025.

***Discovery Practice***

19. On May 3, 2021, prior to filing suit, Plaintiffs requested numerous documents and information from Defendants pursuant to Section 104(b)(4) of ERISA.

20. Defendants responded to Plaintiffs' request on May 13, 2021.

21. On April 17, 2023, Plaintiffs served their first set of interrogatories and first request for production of documents.

22. On April 20, 2023, Plaintiffs served Initial Disclosures.

23. On October 26, 2023, November 10, 2023, and in December of 2024 Mass General provided Plaintiffs with dozens of documents for mediation purposes.

24. Plaintiffs engaged consulting experts throughout this litigation, especially during the pre-filing and mediation stages.

***Settlement Negotiations***

25. The Parties first attempted to settle this matter on November 16, 2023, via a voluntary mediation with David Geronemus, who is well-versed and experienced in mediating ERISA matters. The Parties exchanged mediation memoranda with each other and Mr. Geronemus ahead of the mediation session. Although the November 16, 2023 mediation did not result in a settlement, it did provide each party with an understanding of the other party's respective strengths and weaknesses.

26. On January 30, 2025, the Parties engaged in another mediation session with David Geronemus. The Parties exchanged supplemental mediation statements ahead of the mediation. The mediation resulted in the Parties' reaching a settlement in principle.

27. Before the mediation, Plaintiffs estimated damages to be $27,771,081 based on the difference between what the Plan paid in RKA fees and what a reasonable fee would be in light of the Plan's circumstances and prevailing marketplace throughout the Class Period. Also, Plaintiffs estimated an additional $12,938,913 in damages based on the Plan also paying asset-based charges to TIAA-CREF for recordkeeping services for TIAA-CREF investments held by participants. Defendants vigorously opposed Plaintiffs' damages calculations, maintaining that the Plan's fiduciaries carried out prudent processes and all of the Plan's fees were reasonable during the Class Period.

28. On February 6, 2025, the Parties filed a Joint Status Report and informed the Court that a settlement had been reached in principle. (ECF No. 114). The Parties then continued to discuss the final details of the settlement agreement.

29. The Parties agreed to settle this matter for $8,250,000.00. The Settlement Agreement is attached hereto as Exhibit 1. Based on the aforementioned negotiations and exchange of information, the Parties were able to negotiate a fair settlement.

30. It is Plaintiffs' Counsel's opinion that the proposed settlement is fair and reasonable.

***The Settlement Terms***

31. The Settlement provides Mass General will pay eight million two-hundred and fifty thousand dollars ($8,250,000.00)– the Gross Settlement Amount – to be allocated to participants on a *pro rata* basis pursuant to the proposed Plan of Allocation (*see* Exhibit C to

Settlement Agreement) in exchange for releases and dismissal of this action (described in Article 7 of the Settlement Agreement).

32. The Gross Settlement Fund will be used to pay the participants' recoveries, administrative expenses to facilitate the Settlement, and Plaintiffs' Counsel's attorneys' fees and costs, and Class Representatives' Case Contribution Awards if awarded by the Court.

33. The Class Members include all individuals in the Settlement Class, or:

> [A]ll persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period. Excluded from the Settlement Class are Defendants and their Beneficiaries.

*See* Settlement Agreement, Section 1.48.

34. The Net Settlement Amount will be allocated to each Class Member in proportion to the sum of that Class Member's Balance as compared to the sum of the Balance for all Class Members. *See* Plan of Allocation at II.C. Former Participants who are entitled to a distribution of $9.99 or less (the Former Participant De Minimis Amount) will not receive a distribution from the Net Settlement Amount. *Id.* at II.D. Former Participants shall be paid directly by the Settlement Administrator by check. *Id.* at II.F.

35. Under the Agreement, Class Counsel may seek to recover their attorneys' fees not to exceed $2,749,725.00 (33 1/3% of the Gross Settlement Amount). *See* Settlement Agreement, Section 6.1. Class Counsel may also seek reimbursement for reasonable litigation costs and expenses they advanced during the Action which also shall be recovered from the Gross Settlement Amount. *Id.* Additionally, Class Counsel may seek Class Representatives' Case Contribution Awards in an amount not to exceed $7,500 for each Plaintiff, Mark Norton, Dashka Louis, Caroline Mitchel, Nancy Bartlett, and Azilda Cordahi. *Id.*

36. Defendants may also retain an Independent Fiduciary to approve and authorize the settlement on behalf of the Plan. *See* Settlement Agreement, Sections 1.26. The fees and expenses of the Independent Fiduciary, not to exceed $25,000, will be paid from the Gross Settlement. *Id.*, Section 1.3.

37. The Parties received an email from the DOL on July 8, 2025 seeking more information on the claims being released under Section 1.40 of the Settlement Agreement. The Parties and the DOL are conferring on this issue and Plaintiffs will address any findings by the DOL no later than September 18, 2025 when Plaintiffs' supplemental briefing is due.

***Settlement Notice***

38. The Court approved Class Counsel's selection of Analytics LLC ("Analytics") as settlement and notice administrator and duly appointed Analytics as the Settlement Administrator. *See* Preliminary Approval Order, ¶ 8.

39. Analytics has submitted a declaration testifying to their efforts regarding sending notice to the Settlement Class as well as any objections filed. *See* Declaration of Settlement Administrator in Support of Plaintiffs' Motion for Final Approval signed by Jeffrey Mitchell ("Mitchell Decl.") (attached as Exhibit 2).

40. On June 12, 2025, Analytics received spreadsheets containing, among other information, the names, addresses, and e-mail addresses, for a total of 166,277 unique Settlement Class Members. Mitchell Decl., ¶¶ 6-7.

41. On June 18, 2025, Analytics emailed the Court-approved Notices of Settlement ("Notice") to Class Members who had an email address available in the Class Data, and also mailed by first-class mail Notices to 3,281 Class Members who did not have an email address in the Class

Data. *See* Mitchell Decl., ¶ 7. Analytics then processed a first-class U.S. mailing of the Notice for the 86,895 class members whose emails bounced. *Id*., ¶ 8.

42. Analytics updated the Settlement Class member address information using either forwarding addresses provided by the U.S. Postal Service, or when none was provided, obtaining new addresses through conducting a "skip trace." Mitchell Decl., ¶¶ 6, 9.

43. To date, 275 Notices were returned to Analytics by the U.S. Postal Service without a forwarding address. Mitchell Decl., ¶ 10.

44. The notice program apprised Settlement Class members of the terms of the Settlement and of their right to object to any or all of the terms of the Settlement, Plan of Allocation, Case Contribution Awards, or to Class Counsel's motion for award of attorneys' fees and reimbursement of litigation expenses. The Class Notice was also posted on a dedicated website – www.massgeneralerisasettlement.com – through which the public and the Plan's current and former participants could view copies of important case documents, including the Settlement Agreement with Exhibits, and the date and time of the Fairness Hearing.

***Class Counsel's Requested Fee and Expense Awards is Fair and Reasonable***

45. As detailed in the accompanying Fee Memorandum, Class Counsel believes that Class Counsel's request for attorneys' fees readily satisfies the factors most commonly considered by district courts in the First Circuit.

46. This was a vigorously prosecuted case which involved considerable time and resources investigating the Action, reviewing and analyzing documents produced through informal discovery, and negotiating an excellent result for the Settlement Class at mediation.

47. Class Counsel undertook this action aware of the possibility they could be left uncompensated for their time and out-of-pocket expenses.

48. The recovery of $8,250,000.00 in this case was achieved through the skill, work, dedication, and effective advocacy of Class Counsel who leaned on their decades of experience with complex ERISA class action litigation of this type.

49. As payment for services rendered in achieving such a result, Class Counsel seek an award of attorneys' fees in the amount of $2,749,725.00 plus reimbursement of expenses reasonably incurred by Class Counsel. Class Counsel's efforts since the inception of this case has been without compensation of any kind and their fee has been wholly contingent upon the result achieved.

50. In this action, attorneys' fees equaling 33 1/3% of the Settlement Fund results in a fair and reasonable fee, especially given that the monetary result provides a benefit to the Settlement Class, and society has as interest that the wrongdoing alleged is prevented in the future.

51. As detailed in the Fee Memo, awarding one third or 33.33% of the common fund is typical for ERISA class actions in the First Circuit.

52. Attached as Exhibit 3 is the Fee Order in *In re Biogen, Inc. ERISA Litig*., No. 20-CV-11325 (D. Mass. Dec. 8, 2023) (ECF No. 128) (awarding one-third of the $9,750,000 settlement fund).

53. Attached as Exhibit 4 is the Fee Order and Final Approval Order in *Brown v. MITRE Corp*., No. 22-CV-10976 (D. Mass. Feb. 20, 2025) (ECF Nos. 113-114) (awarding 33.33% of a $3,400,000 fund despite an objection to the fees).

54. Attached as Exhibit 5 is the Fee Order in *Turner v. Schneider Elec. Holdings, Inc*., No. 20-11006 (D. Mass. Sept. 20, 2023) (ECF No. 227) (awarding 33.33% of a $200,000 fund).

55. Attached as Exhibit 6 is the Fee Order in *In re G.E. ERISA Litig*., No. 17-CV-12123 (D. Mass. March 8, 2024) (ECF No. 385) (awarding one third of a 61-million-dollar fund).

56. As lead Plaintiffs' attorney, I personally managed, delegated, and supervised the allocation of personnel and expenses employed by my firm in this case. We have aggressively, efficiently, and vigorously prosecuted this case and represented the best interest of the Plaintiffs and the participants and beneficiaries of the Plan. Over the course of the litigation, we have incurred the following expenses:

| **Expense Category** | **Total** |
|---|---|
| FedEx | $114.86 |
| Court Costs | $1,152.00 |
| Travel Expenses | $4,327.45 |
| Westlaw and other Research | $986.77 |
| E-Discovery | $950.54 |
| Mediation | $14,500.00 |
| **Total** | **$22,031.62** |

57. The expenses listed above were actually incurred in the litigation of this case as reflected in the books and records of Capozzi Adler. These books and records are prepared from receipts, expense vouchers, check records, and other documents and are an accurate record of the expenses. These expenses were necessary to the prosecution and settlement of the case, and are of the type that would be billed to hourly clients of the firm.

58. The firm's hours and lodestar devoted to this matter, as of July 18, 2025 are as follows:

| **Name** | **Position** | **Hourly Rate** | **Hours** | **Total** |
|---|---|---|---|---|
| Mark K. Gyandoh | Partner | $915.00 | 260.8 | $238,632.00 |
| Donald R. Reavey | Partner | $885.00 | 73.6 | $65,136.00 |
| James Wells | Partner | $700.00 | 37.4 | $26,180.0 |
| Gabrielle P. Kelerchian | Mid-Level Associate | $550.00 | 21.1 | $11,605.00 |
| Brandon Williams | Mid-Level Associate | $550.00 | 65.6 | $36,080.00 |
| James Maro | Partner | $900.00 | 20.7 | $18,630.00 |
| Linda Gussler | Paralegal | $350.00 | 96.3 | $33,705.00 |
| Tina Scheetz | Paralegal | $335.00 | 3.0 | $1,005.00 |
| Jessica Murphy | E-Discovery Paralegal | $250.00 | 1.9 | $475.00 |
| Giulia Conboy | Associate | $450.00 | 72.7 | $32,715.00 |
| Christeena Joy | Paralegal | $250.00 | 8 | $2,000.00 |
| Thomas Sinclair | Mid-Level Associate | $550.00 | 10.6 | $5,830.00 |
| Raashira Ragland | Legal Assistant | $250.00 | 45.9 | $11,475.00 |
| | | | **717.60** | **$483,468.00** |

59. The above table is based on my firm's contemporaneous time records, and breaks out the hours and rates for each attorney, paralegal and professional staff.

60. Details and material supporting the time records and expenses referenced in this declaration are available upon the request of the Court.

61. I reviewed the time printouts to confirm both the accuracy of the entries on the printouts as well as the necessity for and reasonableness of the time commitment to the litigation.

Based on this review, I believe the time reflected in my firm's lodestar calculation is reasonable in amount and was necessary for the effective and efficient prosecution and resolution of the litigation. Capozzi Adler litigated this case on a wholly contingent basis and the hourly rates shown for the attorneys and paraprofessionals at my firm are the current hourly rates for contingent matters. These rates are in line with those charged by other firms in the field of nationwide ERISA class action work and have been approved by courts in numerous cases. Moreover, the rates are reasonable in comparison to the firms that defend nationwide ERISA class action cases.

62. Class counsel was also ably assisted in this litigation by co-counsel Peter A. Muhic of Muhic Law, LLC. Mr. Muhic performed 111.2 hours of work in connection with this case. His hourly rate ordinarily charged to the firm's clients is $950/hour. Thus, the total lodestar value of his firm's time in this case is $105,640.00. Attached as Exhibit 21 is a declaration from Mr. Muhic attesting to the foregoing.

63. In total, Class Counsel and Plaintiffs' Counsel spent 828.80 hours on this case with a corresponding lodestar of $589,108.00, meaning Class Counsel's multiplier in this action is 4.67, within the range approved in other matters as addressed in the Fee Memorandum. Combined expenses were $22,031.62.

64. The time entries above do not include future time that will be spent on this case to communicate with the tens of thousands of class members and monitor Defendants' compliance with the Settlement, among other things. It also does not include time that will be spent in preparation for and the interview with the Independent Fiduciary with respect to its review of the Settlement, or preparation for and attendance at the Fairness Hearing.

65. Without the Action, it is highly unlikely that individual claimants would have had the resources to pursue claims of this magnitude. Protecting the retirement funds of employees,

and obtaining recompense when those funds are mismanaged, is in the public interest and supports the fee award sought.

66. As discussed in the accompanying Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Settlement Agreement and Fee memorandum, as a result of diligent efforts and their skill and expertise, Class Counsel was able to negotiate an excellent Settlement for the Settlement Class.

***Capozzi Adler's Hourly Rates Compare Favorably to Their Peers***

67. For its contingency practice, Capozzi Adler charges partner rates of $885 to $915 per hour; associate and mid-level associate rates of $450-550 per hour; and paralegal and professional staff rates that range from $335 to $350 per hour. More junior support staff are billed at $250 per hour. These hourly rates are commensurate with the firm's degree of skill, experience, and reputation. Each member of Capozzi Adler's Fiduciary Practice Group has the requisite experience, as described above, to command their hourly rates.

68. In the course of my 20-year nationwide ERISA practice, I have worked with most if not all firms that have a national ERISA class action practice. In my experience, while there are invariably differences in rates between different firms – and even between rates for lawyers within the same firm with the same number of years of practice – Capozzi Adler's rates are broadly in line with rates of other firms with nationwide class action practices, that have been the basis for awards of fees in courts around the country.

69. Four of these firms that I have worked for, or with, in the past recently filed declarations in support of a fee petition in *Beach, et al. v. JPMorgan Chase Bank, N.A. et al.*, No. 1:17-cv-00563 (S.D.N.Y.). Like this Action, *Beach* involved allegations that JPMorgan Chase breached its fiduciary duties under ERISA to participants in the JPMorgan Chase retirement plan.

Case 1:22-cv-10045-MJJ Document 135 Filed 07/18/25 Page 14 of 22

*Id.* Plaintiffs' counsel's declarations demonstrate attorneys and staff in their offices charge similar rates as Capozzi Adler.

70. My former firm Kessler Topaz Meltzer & Check, LLP (KTMC), a Pennsylvania based firm like Capozzi Adler, charges partner rates that range from $700 to $920; associate rates that range from $400 to $505; paralegal rates that range from $250 to $275; and professional staff rates of $250. *See* Exhibit 7 (Excerpts of KTMC declaration).

71. Nichols Kaster, PLLP, a Minnesota-based firm with a national ERISA practice, charges partner rates that range from $650 to $975; associate rates that range from $450 to $675; paralegal and professional staff rates of $250. *See* Exhibit 8 (Excerpts of Nichols Kaster declaration).

72. Keller Rohrback L.L.P., a Washington State-based firm with a national ERISA practice, charges partner rates that range from $625 to $1,060; associate rates that range from $400 to $595; and professional staff rates that range from $241 to $365. *See* Exhibit 9 (Excerpts of Keller Rohrback declaration).

73. Robbins Geller Rudman & Dowd LLP, a national ERISA practice, charges partner rates that range from $810 to $1,375; associate rates that range from $175 to $515; paralegal rates that range from $325 to $395; and professional staff rates that range from $175 to $400. *See* Exhibit 10 (Excerpts of Robbins Geller declaration).

74. Sanford Heisler Sharp, LLP, a national ERISA practice, charges partner rates that range from $1,000 to $1,4000, associate rates that range from $500 to $900, and paralegal rates that range from $275 to $325. *See* Exhibit 11 (Excerpts of Sanford Heisler declaration).

75. Cohen Milstein Sellers & Toll PLLC, a national ERISA practice with a Boston, Massachusetts office, charges attorney rates that range from $575 to $1,025, and paralegal rates that range from $290 to $335. *See* Exhibit 12 (Excerpts of Cohen Milstein declaration).

76. Izard Kindall & Raabe LLP, a national ERISA practice, charges attorney rates of $700 to $975, and paralegal rates of $180. *See* Exhibit 13 (Excerpts of Izard Kindall declaration).

77. Motley Rice LLC, a national ERISA practice, charges partner (or "member") rates that range from $970 to $1,315, associate rates that range from $525 to $680, and a paralegal rate of $380. *See* Exhibit 14 (Excerpts of Motley Rice declaration).

78. Additionally, Capozzi Adler's rates generally compare favorably to the large, sophisticated firms that typically represent defendants in ERISA class actions.

79. The Valeo Report, a report that collected and summarized hourly rates across various firms, shows that among ERISA practice groups within the top 200 law firms in the defense bar, the 2017 hourly rate range for senior partners was $320-$1,363 (with an average of $835), for partners was $296-$1,202 (with an average of $751), and for senior associates was $238-$938 (with an average of $580). *See* Exhibit 15 (Excerpts of Valeo Report).

80. Finally, Capozzi Adler's rates have been explicitly or implicitly approved by numerous courts while granting requests for fees. *See, e.g., Brown v. MITRE Corp.*, No. 22-cv-10976 (D. Mass. Feb. 20, 2025); *Harding et al. v. Southcoast Hosp. Group et al.*, No. 1:20-cv-12216-LTS (ECF. No. 51) (D. Mass. April 25, 2022); *see also Hawkins v. Cintas Corp.*, No. 19-cv-1062, 2025 WL 523909, at *4 (S.D. Ohio Feb. 18, 2025); *Davis v. Magna Int'l of Am., Inc.*, No. 20-cv-11060, 2025 WL 732300, at *2 (E.D. Mich. Jan. 27, 2025); *Diaz v. BTG Int'l, Inc.*, No. 19-cv-1664-JMY, 2021 WL 2414580 (E.D. Pa. June 14, 2021); *Pinnell v. Teva Pharmaceuticals*

*USA, Inc.*, No. 2:19-cv-05738-MAK (ECF No. 93) (E.D. Pa. June 11, 2021); *Gerken et al. v. Mantech Int'l.* No. 1:20-cv-01356-TSE (ECF No. 41) (E.D. Va. May 21, 2021);.

***Counsel's Experience***

81. I received both my J.D. (2001) and LLM in trial advocacy (2011) from Temple University School of Law. While at Temple, I was the research editor for the Temple International and Comparative Law Journal. After law school I clerked for a year with the late Hon. Dennis Braithwaite of the New Jersey State Appellate Court.

82. I have been litigating ERISA fiduciary breach lawsuits for 20 years, first at my prior firm of KTMC, and currently at Capozzi Adler where, as noted above, I have been a partner and chair of the Fiduciary Practice Group for the last six years. Over my career I have been actively involved in many high-profile ERISA class actions. For example, I was one of the lead attorneys for plaintiffs in *Fifth Third Bancorp, et al., v. Dudenhoeffer, et al.*, 573 U.S. 409, 134 S. Ct. 2459 (2014), a seminal Supreme Court decision that clarified the unwavering duties owed by fiduciaries to pension plan participants. *See* biography at https://capozziadler.com/mark-k-gyandoh-esquire/.

83. James A. Maro, a partner in the Fiduciary Practice Group, is an experienced litigator frequently handling multi-million dollar disputes. Mr. Maro earned his B.A. in 1997, from the Johns Hopkins University Krieger School of Arts and Sciences and his Juris Doctor degree in 2000, from Villanova University Charles Widger School of Law. *See* biography at https://capozziadler.com/james-maro-esquire/.

84. My partner James Wells is an experienced litigator who has assisted the Fiduciary Practice Group prosecute and settle multiple millions of dollars' worth of ERISA cases. He is a 1998 graduate of Temple University School of Law and has a diverse litigation background, including representing plaintiffs in claims under the Fair Labor Standards Act, whistleblowers in

cases under the False Claims Act, and defendants in criminal matters. *See* biography at https://capozziadler.com/james-a-wells-esquire/.

85. Peter Muhic, of Muhic Law, LLC, who is co-counsel in this matter, and has himself submitted a declaration to attest to his experience, is an accomplished trial lawyer who has tried complex cases to verdict in federal and state courts throughout the country. He has extensive experience litigating cases under ERISA, FLSA, RICO, and products liability statutes, and has served as co-lead counsel numerous nationwide class action cases. *See* biography at https://muhiclaw.com/about.

86. Rounding out the ERISA team are other well-qualified attorneys and our support staff which include paralegals and other paraprofessionals who assist in the practice. Additionally, as litigation dictates, the ERISA team avails itself of the services of the other attorneys and staff at the firm.

87. In this case and other recent, analogous ERISA breach of fiduciary duty matters, Capozzi Adler was appointed class counsel. *See, e.g. McCool v. AHS Mgmt. Co., Inc.,* No. 19-cv-01158, 2023 WL 2729161 (M.D. Tenn. Mar. 30, 2023) (appointing Capozzi Adler as Class Counsel); *Sweet v. Advance Auto Stores Co., Inc.*, No. 21-cv-549, 2023 WL 3959779 (W.D. Va. June 9, 2023); *Huang, v. TriNet HR III, Inc.*, No. 20-cv-2293, 2022 WL 13631836 (M.D. FL. Oct. 21, 2022); *Stengl v. L3Harris Techs., Inc.*, No. 22-cv-572, 2023 WL 11932263 (M.D. Fla. June 5, 2023); *Lucas, v. MGM Resorts International*, 20-cv-01750 (D. Nev. Oct. 20, 2022) (ECF 112); *Nunez, v. B. Braun Medical, Inc.*, No. 20-cv-04195 (E.D. Pa. June 30, 2022) (ECF. 69); *Boley v. Universal Health Servs., Inc.*, 337 F.R.D. 626 (E.D. Pa. 2021).

88. Additionally, Capozzi has been appointed interim lead or co-lead class counsel in several analogous ERISA breach of fiduciary duty matters. *See, e.g., Tracy et al. v. The American*

*National Red Cross*, No. 1:21-cv-00541-EGS (D.D.C. Apr. 16, 2021) (appointing Capozzi Adler interim Co-Lead Class Counsel); *Bilello, et al., v. Estee Lauder, Inc., et al.*, No. 1:20-cv-04770-JMF (S.D.N.Y. Aug. 10, 2020) (Doc. 11.) (appointing Capozzi Adler interim lead class counsel); *Covington et al. v. Biogen Inc. et al.*, No. 1:20-cv-11325 (D. Mass. Oct. 6, 2020) (Doc. 24) (appointing Capozzi Adler interim Co-Lead Class Counsel).

89. In the course of prosecuting ERISA class actions such as this, I have supervised the preparation of numerous consolidated pleadings, responses to motions to dismiss, drafting of discovery requests and review of hundreds of thousands of pages of plan-related documents and related documentation, and litigated cases through the summary judgment and trial phases.

90. The firm strives to obtain the best results for class members in every circumstance. We have successfully defeated motions to dismiss similar allegations in numerous actions. *See, e.g., Brown v. MITRE Corp.,* No. 22-cv-10976, 2023 WL 2383772 (D. Mass. Mar. 6, 2023); *Seibert v. Nokia of Am. Corp.,* No. 21-cv-20478, 2024 WL 2316551 (D.N.J. May 22, 2024); *Kendall et al v. Pharmaceutical Product Development, LLC*, No. 7:20-cv-00071, 2021 WL 1231415 (E.D.N.C. March 31, 2021) (upholding allegations that plan fiduciaries selected higher-priced identical share classes and overpaid for recordkeeping); *Stengl v. L3Harris Techs., Inc.*, No. 22-cv-572, 2023 WL 2633333 (M.D. Fla. Mar. 24, 2023); *Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293 (D. Minn. 2021); *Davis v. Magna Int'l of America, Inc.*, No. 20-cv-11060, 2021 WL 1212579 (E.D. Mich. March 31, 2021) (same); *Jones v. Coca-Cola Consolidated, Inc.*, No. 20-cv-00654, 2021 WL 1226551 (W.D.N.C. March 31, 2021) (same); *McCool v. AHS Management Company, Inc.*, No. 19-cv-01158, 2021 WL 826756 (M.D. Tenn. March 4, 2021) (same); *Garnick v. Wake Forest Univ. Baptist Med. Ctr.,* 629 F. Supp. 3d 352 (M.D.N.C. 2022); *In re Medstar ERISA Litig.*, No. 20-cv-1984, 2021 WL 391701 (D. Md. Feb. 4, 2021) (same); *Silva*

*v. Evonik Corp*., 2020 WL 12574912 (D.N.J. Dec. 30, 2020) (same); *Moore v. Humana, Inc.*, No. 21-cv-232, 2022 WL 20766504, at *3 (W.D. Ky. Dec. 2, 2022); *Pinnell, v. Teva Pharmaceuticals USA, Inc.*, No. 19-cv-5738, 2020 WL 1531870 (E.D.Pa. Mar. 31, 2020); *Peterson v. Insurance Services Office, Inc*., No. 20-cv-13223, 2021 WL 1382168 (D.N.J. Apr. 13, 2021); *Rosenkrantz, et al., v. Altru Health System,* et al., 20-cv-168, 2021 WL 5868960 (Dec. 10, 2021).

91. We have also been successful at the appellate level resulting in the reversal and remand of wrongly dismissed actions. *See, e.g., Perkins v. United Surgical Partners Int'l, Inc.,* No. 23-cv-10375, 2024 WL 1574342 (5th Cir. Apr. 11, 2024) (reversing district court dismissal of ERISA excessive fee action); *Kruchten v. Ricoh USA, Inc.*, No. 23-cv-1928, 2024 WL 3518308 (3d Cir. July 24, 2024) (same); *Kong et al. v. Trader Joe's Co.,* No. 20-56415, 2022 WL 1125667 (9th Cir. Apr. 15, 2022) (same); *Davis et al. v. Salesforce.com. Inc. et al.*, No. 21-15867, 2022 WL 1055557 (9th Cir. Apr. 8, 2022) (same). Conversely, we have successfully obtained affirmance of correctly decided cases like in the instant matter. *See, e.g., Hawkins et al. v. Cintas Corp.*, No. 21-3156 (6th Cir. Apr. 27, 2022) (upholding denial of motion to compel arbitration in ERISA case); *Boley v. Universal Health Servs., Inc*., 36 F.4th 124 (3d Cir. 2022) (upholding the grant of class certification).

92. My firm has also engaged in successful settlement negotiations and mediations in ERISA actions, recovering over a hundred million dollars for its clients and class members to date. *See, e.g., Brown v. MITRE Corp*., No. 22-cv-10976 (D. Mass. Feb. 20, 2025) (ECF Nos. 113-114) (recovered a $3,400,000 class settlement); *Peterson v. Insurance Services Office, Inc*., No. 3:20-cv-13223 (D.N.J. May 22, 2024) (recovered $4,000,000.00 class settlement); *Hawkins v. Cintas Corp*., No. 19-cv-1062, 2024 WL 3982210 (S.D. Ohio Aug. 27, 2024) (same); *Garnick v. Wake Forest Univ. Baptist Med*. Ctr., 21-cv-00454 (M.D.N.C. July 2, 2024) (recovered $3,800,000.00

class settlement); *McNeilly v. Spectrum Health System*, No. 20-cv-00870 (W.D. Mich. 2023) (recovered $6,000,000.00 class settlement); *Buescher, v. Brenntag North America, Inc.,* No. 20-cv-00147 (E.D. Pa. 2020) (recovered $2,300,000.00 class settlement); *Davis v. Magna Int'l of Am., Inc.,* No. 20-cv-11060, 2025 WL 66052, at *1 (E.D. Mich. Jan. 10, 2025) (recovered $2,900,00 settlement); *Pinnell v. Teva Pharmaceuticals USA, Inc.,* No. 19-cv-05738-MAK (E.D. Pa. 2019) (settlement in the amount of $2,550,000.00 after successful mediation); *Dean v. Cumulus Media, Inc*., No. 22-cv-04956 (N.D. Ga. 2023) (recovered $1,000,000.00 settlement); *Loomis v. Nextep, Inc.,* No.: 21-cv-00199 (W.D. Okla. 2023) (recovering $1,100,000.00); *Freck v. Cerner Corp*., No. 20-cv-00043 (W.D. Mo. 2020) (recovered $4,050,000.00 class settlement); *Gerken v. ManTech Int'l Corp.,* No. 20-cv-01536 (E.D. Va. 2020) (recovered $1,200,000.00 class settlement).

93. Capozzi Adler also has the resources and commitment to deploy those resources on behalf of the proposed class. With three office locations, the firm has been successfully serving clients for over 25 years offering a full range of legal services.

94. Given my years of experience in this field of law, including, trying an analogous case to an unfavorable verdict for plaintiffs in *Nunez v. B. Braun Med., Inc.*, 2023 WL 5339620 (E.D. Pa. Aug. 18, 2023), I believe the settlement achieved in this case is adequate and certainly reasonable and fair.

***Case Contribution Awards Sought for the Plaintiffs Are Reasonable***

95. Plaintiffs seek an award of $7,500 for each of the three Class Representatives for their contributions to the prosecution and Settlement of the Action. Any such awards will be paid from the Settlement Fund.

96. Each of the Plaintiffs was instrumental in seeking relief on behalf of the Plan and they each have been actively involved in the litigation. These individuals took time away from

other obligations in order to fulfill their obligations to the Settlement Class by: (1) engaging counsel, reviewing the Complaint and agreeing to publicly serve as Named Plaintiffs; (2) staying informed of the case and making themselves available at all times to discuss the litigation; (3) providing information and documents; (4) participating in teleconferences concerning the Action; and (5) and reviewing, considering, and ultimately approving the proposed Settlement for presentation to the Court.

97. Attached hereto as Exhibit 16 is Plaintiff Norton's declaration in support of his application for a case contribution award. Plaintiff Louis's declaration is attached as Exhibit 17, Plaintiff Mitchell's declaration is attached as Exhibit 18, and Plaintiff Bartlett's declaration is attached as Exhibit 19.

98. As discussed in the accompanying Fee Memorandum, the requested case contribution awards are supported by ample legal authority in similar cases.

99. Further, to date, no objection to the Case Contribution Awards request has been raised.

***Authority Supporting Appropriateness of Class Certification***

100. Having litigated almost exclusively ERISA breach of fiduciary duty actions over my career it is my experience that the types of claims asserted in this action are typically certified.

101. Attached hereto as Exhibit 20 is a non-exhaustive list of more than eighty-nine (89) decisions from around the country in which courts certified classes in ERISA breach of fiduciary duty actions, like the instant action, including several decisions certifying classes in "excessive fee" suits.

I declare, pursuant to 28 U.S.C. §1746 and under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 18th day of July, 2025, in Merion Station, Pennsylvania.

**CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esquire

***Proposed Class Counsel***